Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA  92108
P: 866-219-3343

Daniel G. Shay (SBN 250548)
DanielShay@TCPAFDCPA.com
**LAW OFFICE OF DANIEL G. SHAY**
2221 Camino del Rio S, Ste 308
San Diego, CA  92108
P: 619-222-7429

*Attorneys for Plaintiff*
*and The Putative Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID KAUFFMAN, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br><br>META PLATFORMS, INC.,<br><br>Defendant. | CASE NO:   4:22-cv-06658<br><br>CLASS ACTION<br><br>COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:<br><br>1. THE WIRETAP ACT, 18 U.S.C. § 2510 ET SEQ<br><br>2. THE CALIFORNIA INVASION OF PRIVACY ACT, CAL. PEN. CODE § 631<br><br>JURY TRIAL DEMANDED |

1

Class Action Complaint

**INTRODUCTION**

1.   David Kauffman ("Plaintiff"), individually and on behalf of all other similarly situated consumers ("Class Members"), brings this action for damages and injunctive relief against Meta Platforms, Inc. ("Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, related entities for violations of the Federal Wiretap Act, 18 U.S.C. §2510 et seq (the "Wiretap Act") and the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 631, in relation to the unauthorized interception, collection, recording, and dissemination of Plaintiff's and Class Members' communications and data.

2.   The Federal Legislature passed the Wiretap Act to protect the privacy of the people of the United States. The Wiretap Act is very clear in its prohibition against intentional unauthorized taping or interception of any wire, oral, or electronic communication.  In addition to other relevant sections, the Wire Tap Act states that any person who;

> "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" has violated the act.  18 U.S.C. §2511.

3.   The California State Legislature passed CIPA to protect the right of privacy of the people of California. The California Penal Code is very clear in its prohibition against unauthorized tap or connection without the consent of the other person:

> "Any person who, by means of any machine, instrument, or contrivance, or any other matter, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable. Or instrument of any internal telephonic communication system, or who willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or

2

received at any place within this state [violates this section]."
Cal. Penal Code § 631(a).

4.   This case stems from Defendant's unauthorized interceptions and connections to Plaintiff's and Class Members' electronic communications when using Defendant's Facebook or Messenger applications.

5.   Defendant derives its primary stream of revenue through Plaintiff's and Class Members' data it obtains by tracking Plaintiff's and Class Members' movements online.

6.   Beginning April 2021, Apple's iOS 14 update required Defendant to obtain its users' informed consent before tracking user internet activity on apps and third-party websites. As a result, Defendant lost access to its primary steam of revenue.

7.   Now, even when users do not consent to tracking, Defendant tracks Facebook users' online activity and communications with external third-party websites by injecting JavaScript code into those sites. This means every time a user clicks a web link within the apps Defendant owns such as Facebook, Instagram, or Messenger apps, Defendant automatically directs them to the in-app browser Defendant monitors rather than directing the user to a default browser. Defendant fails to inform its users of this tracking.

8.   The information Defendant intercepts, monitors, and records includes personally identifiable information ("PII"), private health details, text entries, and other sensitive confidential facts.

9.   Defendant's undisclosed tracking of Plaintiff's and Class Members' browsing activity and communications violates federal and state wiretap laws, entitling Plaintiff and Class Members to damages and injunctive relief.

10.  Plaintiff brings this action for every violation of the Wiretap Act which provides for statutory damages of the greater of $10,000 or $100 per day for each violation of 18 U.S.C. §2510 et seq under 18 U.S.C. §2520.

///

Class Action Complaint

11. Plaintiff also brings this action for every violation of California Penal Code § 631 which provides for statutory damages of $2,500 for each violation, pursuant to California Penal Code § 631(a).

12. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

13. Unless otherwise stated, all the conduct engaged in by Defendant took place in California.

14. All violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

15. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

**PARTIES**

16. Plaintiff is, and at all times mentioned herein was, a natural person and resident of the State of California and the County of San Diego.

17. Defendant is, and at all times mentioned herein was, a Delaware corporation with its principal place of business located at One Hacker Way, Menlo Park, CA 94025.

18. At all times relevant herein Defendant conducted business in the State of California, in the County of San Diego, within this judicial district.

**JURISDICTION & VENUE**

19. The Court has personal jurisdiction over Defendant because it is headquartered in this District.

///

///

Class Action Complaint

20. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises in part under federal law—the Wiretap Act, 18 U.S.C. § 2510 et seq—and pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members, the amount in controversy exceeds $5 million (excluding interest and costs), and at least one Class member is a citizen of a state different from the state in which Meta is domiciled.

21. Venue is proper under 28 U.S.C. § 1391 because Meta is headquartered in this District.

### DIVISIONAL ASSIGNMENT

22. Pursuant to Civil Local Rule 3-2(c), a substantial part of the events giving rise to the Plaintiff and Class members' claims occurred in San Mateo County, California. Consequently, this action should be assigned to the San Francisco Division or the Oakland Division.

### FACTUAL ALLEGATIONS

**I.    Defendant's History of Pursuing Profit at the Expense of User Privacy**

23. Defendant owns and operates large social media platforms, including Facebook and Instagram.

24. Defendant's core business entails collecting revenue for advertisements in conjunction with its data mining practices. Although Defendant does not require Facebook members to pay a monetary subscription fee, membership is not actually free, as Defendant conditions the use of Facebook upon Plaintiff and Class Members disclosing sensitive and valuable personal information when initially signing up to utilize Facebook.

25. Defendant's business model relies heavily on its ability to target individual users, collect their information, understand the individual user's preferences and dislikes, and use the information to generate profit in the form of valuable targeted advertisements.

///

Class Action Complaint

26.     Defendant's financial success is the result of connecting advertisers with its massive repository of personal data. Defendant maximizes its profits by targeting ads to individuals whose individual algorithms have determined would be personally interested in the certain advertised product or service.

27.     Defendant thus collects extensive data abouts its users, continuously aggregates and analyzes this data, and deploys the analysis to offer targeted advertising services to advertisers.

28.     Defendant's business model results in repeated violations of Plaintiff's and Class Members' privacy rights. Defendant's tactics, though ever evolving, are always aimed at data mining, and its use of plug-ins, cookies, Facebook Beacon, the Facebook Like Button, Facebook Pixel, and related tools have led to dozens of private actions and federal inquiries.

29.     Defendant has a history of divulging its users' personal data. From 2010 to 2018, Facebook allowed more than 150 third parties, including Amazon, Microsoft, Netflix, and Spotify to access users' private messages and details of users' personal contacts without the users' consent. This conduct caused Facebook to pay a $5 billion penalty to settle Federal Trade Commission charges.

II.     **Defendant Tracks Plaintiff and Class Members Without Consent by Manipulating Third-Party Websites and Injecting JavaScript into its in-app Browsers**

30.     Felix Krause, a data privacy researcher, and former Google engineer, released a report that revealed Defendant has been injecting code into third-party websites visited through Facebook, which allows Defendant to track Plaintiff and Class Members and intercept data that would otherwise be unavailable.[1]

///

///

---

[1] https://krausefx.com/blog/ios-privacy-instagram-and-facebook-can-track-anything-you-do-on-any-website-in-their-in-app-browser

Class Action Complaint

31.   Through his research and reporting, Krause developed www.InAppBrowser.com as a tool that can determine whether a particular in-app browser injects JavaScript code into third-party websites. This tool distinguishes Defendant's practices from its competitors and demonstrates that Defendant actively inputs JavaScript code to undermine Plaintiff's and Class Members' privacy preferences.

32.   The following image portrays a web link that does not inject JavaScript to track its users:



33.   The next image portrays a web link that does inject JavaScript to track its users, like Defendant:



34.   Injecting JavaScript into the code of third-party websites allows a malicious actor to intercept confidential information communicated to those sites.[2]

---

[2] https://www.feroot.com/education-center/what-is-a-javascript-injection-attack/

Class Action Complaint

**III.    Defendant Intercepts and Tracks Plaintiff's and Class Members' Private Interactions and Communications with Third-Party Websites, Overriding Privacy Settings**

35.    When Plaintiff and Class Members, while using the Facebook app, clicks on a link to an external website, Defendant automatically reroutes Plaintiff and Class Members to its own in-app web browser instead of Plaintiff's and Class Members' own built-in web browser (such as Safari). As a result, third-party websites are rendered inside the app – enabling Defendant "to monitor everything happening on external websites, without the consent from the user, [] or the website provider."[3]

36.    The Facebook app injects Defendant's JavaScript code into every third-party website Plaintiff and Class Members visit from within Facebook's in-app browser. This allows Defendant to intercept, monitor, and record Plaintiff's and Class Members' interactions and communications with third parties, providing data to Defendant that it aggregates, analyzes, and utilizes to boost advertising revenue.

37.    Defendant never provided any notice to Plaintiff or Class Members regarding Defendant's tracking so as to obtain Plaintiff's and Class Members' consent.

38.    At no point did Defendant fairly or reasonably disclose to Plaintiff or Class Members its practice of intercepting, monitoring, and selling their individual activities and communications while utilizing its in-app browser. Moreover, Plaintiff and Class Members were unaware of Defendant's practices.

39.    The following image displays the systematic process which occurs every time Plaintiff or Class Members clicks on a link received in their inbox or on a Facebook account or post. While the chart demonstrates the process for Instagram, the same process occurs for Facebook as well:

---

[3] https://krausefx.com/blog/ios-privacy-instagram-and-facebook-can-track-anything-you-do-on-any-website-in-their-in-app-browser

Class Action Complaint



40. This figure shows the systematic approach Defendant takes to inject JavaScript into external third-party webpages for the purpose of intercepting, tracking, monitoring, and collecting data about Plaintiff and Class Members' interactions with external third-party webpages.

41. As a result of its JavaScript injection practices, Defendant can surveil and extract details about Plaintiff's and Class members' text selections and other communications with third-party websites:

> This, in combination with listening to screenshots, gives Meta full insight over what specific piece of information was selected & shared. The {Meta} app checks if there is an element with the ID iab-pcm-sdk: According to this tweet, the iab likely refers to "In App Browser". If no element with the ID iab-pcm-sdk was found, [Meta] creates a new script element, sets its source to https://connect.facebook.net/en_US/pcm.js. It then finds the first script element on [the] website to insert the pcm JavaScript file right before [Meta] also queries for iframes on [the] website.[4]

42. By running custom scripts on third-party websites, Defendant can and does intercept, view, monitor, and record all user interactions – every button and link

---

[4] *Id.*

Class Action Complaint

1   tapped, as well as text selections, screenshots, from inputs (including passwords,

2   addresses, and payment card numbers), other PII, protected health details, and

3   other private and confidential communications and data.

4   **IV.    Further Details Regarding Defendant's In-App Tracking Process and**

5   **Business**

6   43.   Defendant's injection of JavaScript coincides with recent privacy updates for

7   iPhones and other iOS devices. In 2020, Apple announced that beginning in 2021,

8   it would change how iOS mobile operating systems handle users' privacy

9   preferences, thereby requiring apps to obtain users' affirmative consent prior to

10   being tracked across applications or external websites. After the Apple

11   announcement, Defendant began "waging a public relations effort to attack Apple

12   ahead of new iOS data privacy changes that would make it harder for advertisers

13   to track users, in a sign of how much Defendant views the move as a threat to its

14   core business."[5]

15   44.   As of May 2021, shortly after Apple introduced iOS, 14.5, 96% of Apple users

16   in the United States had not consented to being tracked by apps on their iPhone;

17   and, "[a]ccording to [Meta], empowering Apple's users to opt out of tracking cost

18   the company $10,000,000,000 in the first year, with more losses to come after

19   that."[6] Hence, "[w]ith web browsers and iOS adding more and more privacy

20   controls into the users' hands, it becomes clear why [Meta] is interested in

21   monitoring all web traffic of external websites."[7]

22   45.   Defendant began showing its users a screen that described the consequences of

23   iOS 14.5 and the long-term impact it could have on Defendant's ability to provide

24   apps and software. Through these and related communications strategies,

25   Defendant was "threatening that users will need to pay for their services. But only

26

27   [5] https://edition.cnn.com/2020/12/16/tech/facebook-apple-ios-privacy-rules/index.html
    [6] https://www.eff.org/deeplinks/2022/06/facebook-says-apple-too-powerful-theyre-right
28   [7] https://krausefx.com/blog/ios-privacy-instagram-and-facebook-can-track-anything-you-do-on-any-website-in-their-in-app-browser

Class Action Complaint

if users don't allow the pair to track them from app to app after installing iOS 14.5."[8]

## V.   Defendant's Conduct Harmed Plaintiff and Class Members

46.   Defendant does not inform Facebook users, like Plaintiff and Class Members, that clicking on links to third-party websites from within Facebook will automatically send them to Facebook's in-app browser, as opposed to Plaintiff's and Class Members' default web browser, or that Defendant will monitor their activity and communications while on those sites.

47.   As a result, Plaintiff and Class Members freely engage with these sites, sharing all manner of personal facts and preferences, without having reason to know Defendant tracks their interactions.

48.   Even if Plaintiff and Class Members realize they are visiting websites from within Facebook's in-app browser, they do not realize that doing so overrides their privacy settings and enables Defendant to track, intercept, and monitor their activities on the websites as a consequence of Defendant's undisclosed practice of injecting JavaScript code. Furthermore, Defendant does not inform Plaintiff or Class Members that its in-app browser differs from Safari and other default browsers in regard to such privacy settings.

49.   Defendant fails to disclose the consequences of browsing, navigating, and communicating with third-party websites from within Facebook's in-app browser – namely, that doing so overrides their default browser's privacy settings.

50.   Defendant actively conceals the fact that it injects JavaScript that alters external third-party websites so that Defendant can intercept, track, and record data that it otherwise could not access.

///

///

///

---

[8] https://www.imore.com/facebook-and-instagram-threaten-charge-access-ios-145-unless-you-give-it-your-data

51. Plaintiff reasonably believed that his communications and interactions with third-party websites were confidential, solely between himself and external websites. Had Plaintiff known that Defendant could and would use its in-app browser to overcome Plaintiff's default browser settings or otherwise override his privacy choices, Plaintiff would have changed his browsing behavior or avoided Facebook's in-app browser altogether, particularly when such communications involved sensitive PII.

52. Plaintiff, on behalf of himself and the proposes Class, seeks legal and equitable remedies, both of which are appropriate and necessary to remedy past harms and prevent future harm.

## STANDING

53. Defendant's conduct constituted invasions of privacy because it disregarded Plaintiff's statutorily protected rights to privacy, in violation of the Wiretap Act and CIPA.

54. Defendant caused Plaintiff to (1) suffer invasions of legally protected interests. (2) The invasions were concrete because the injuries actually existed for Plaintiff and continue to exist every time Plaintiff visits websites from within Facebook. The privacy invasions suffered by Plaintiff were real and not abstract. Plaintiff has a statutory right to be free from interceptions of communications. The interceptions Defendant performed were meant to secretly spy on Plaintiff to learn more about Plaintiff's behavior. Plaintiff was completely unaware Plaintiff was being observed. Plaintiff's injuries were not divorced from concrete harm in that privacy has long been protected in the form of trespassing laws and the Fourth Amendment of the U.S. Constitution for example. Like here, an unreasonable search may not cause actual physical injury, but is considered serious harm, nonetheless. (3) The injuries here were particularized because they affected Plaintiff in personal and individual ways. The injuries were individualized rather than collective since Plaintiff's unique communications

were intercepted and examined without consent during different sessions on separate occasions. (4) Defendant's past invasions were actual and future invasions are imminent and will occur next time Plaintiff utilizes Defendant's in app browser. Defendant continues to intercept communications without consent. A favorable decision by this court would redress the injuries of Plaintiff and each Class.

## TOLLING

55. Any applicable statute of limitations has been tolled by the "delayed discovery" rule.  Plaintiff did not know (and had no way of knowing) that Plaintiff's information was intercepted, because Defendant kept this information secret.

## CLASS ACTION ALLEGATIONS

56. Plaintiff brings this lawsuit as a class action on behalf of Plaintiff and Class Members of a proposed Class and Subclass under F.R.C.P. 23.

57. Plaintiff proposes the following Class and Subclass, consisting of and defined as follows:

Class
All persons in the United States whose communications were intercepted by Defendant or its agents.

Subclass
All persons in California whose communications were intercepted by Defendant or its agents.

58. Excluded from each Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiff reserves the right to redefine each Class and to add subclasses as appropriate based on discovery and specific theories of liability.

///

59. **Numerosity**: The Class Members are so numerous that joinder of all members would be unfeasible and impractical. The membership of each Class is currently unknown to Plaintiff at this time; however, given that, on information and belief, Defendant accessed millions of unique computers and mobile devices, it is reasonable to presume that the members of each Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

60. **Commonality**: There are common questions of law and fact as to Class Members that predominate over questions affecting only individual members, including, but not limited to:

- Whether Defendant intercepted any communications with Class Members;

- Whether Defendant had, and continues to have, a policy during the relevant period of intercepting digital communications of Class Members;

- Whether Defendant's policy or practice of intercepting Class Members digital communications constitutes a violation of 18 U.S.C. § 2520;

- Whether Defendant's policy or practice of intercepting Class Members digital communications constitutes a violation of Cal. Penal Code § 631;

- Whether Plaintiff and Class Members were aware of Defendant's practices and had consented.

61. **Typicality**: Plaintiff's and Class Members' electronic communications were intercepted, unlawfully tapped and recorded without consent or a warning of such interception and recording, and thus, the injuries are also typical to Class Members.

///

1  62.   Plaintiff and Class Members were harmed by the acts of Defendant in at least the
2        following ways: Defendant, either directly or through its agents, illegally
3        intercepted, tapped, recorded, and stored Plaintiff and Class Members' electronic
4        communications, and other sensitive personal data from their digital devices with
5        others, and Defendant invading the privacy of Plaintiff and Class Members.
6        Plaintiff and Class Members were damaged thereby.

7  63.   **Adequacy**: Plaintiff is qualified to, and will, fairly and adequately protect the
8        interests of each Class Member with whom Plaintiff is similarly situated, as
9        demonstrated herein.  Plaintiff acknowledges that Plaintiff has an obligation to
10       make known to the Court any relationships, conflicts, or differences with any
11       Class Member.  Plaintiff's attorneys, the proposed class counsel, are well versed
12       in the rules governing class action discovery, certification, and settlement.  In
13       addition, Plaintiff's attorneys, the proposed class counsel, are versed in the rules
14       governing class action discovery, certification, and settlement. The proposed
15       class counsel is experienced in handling claims involving consumer actions and
16       violations of the Wiretap Act and California Penal Code § 631.  Plaintiff has
17       incurred, and throughout the duration of this action, will continue to incur costs
18       and attorneys' fees that have been, are, and will be, necessarily expended for the
19       prosecution of this action for the substantial benefit of each Class Member.
20       Plaintiff and proposed class counsel are ready and prepared for that burden.

21 64.   **Predominance**: Questions of law or fact common to the Class Members
22       predominate over any questions affecting only individual members of each Class.
23       The elements of the legal claims brought by Plaintiff and Class Members are
24       capable of proof at trial through evidence that is common to each Class rather
25       than individual to its members.

26 ///
27 ///
28 ///

65.     **Superiority**: A class action is a superior method for the fair and efficient adjudication of this controversy because:

a.      Class-wide damages are essential to induce Defendant to comply with Federal and California law.

b.      Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.

c.      Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

d.      Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

e.      Class action treatment is manageable because it will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would endanger.

f.      Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.

66.     Plaintiff and the Class Members have suffered, and will continue to suffer, harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods because as individual Class Members have no way of discovering that Defendant intercepted and recorded the Class Member's electronic communications without Class Members' knowledge or consent.

///

///

Class Action Complaint

67. Each Class may also be certified because:

- The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant;

- The prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

- Defendant has acted, or refused to act, on grounds generally applicable to each Class, thereby making appropriate final and injunctive relief with respect to the members of each Class as a whole.

68. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

69. The joinder of Class Members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court.  The Class Members can be identified through Defendant's records.

### FIRST CAUSE OF ACTION

### VIOLATION OF THE WIRETAP ACT

### 18 U.S.C. § 2510 ET SEQ.

70. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs of this complaint.

71. The Wiretap Act, as amended by the Electronic Communications and Privacy Act of 1986, prohibits the intentional interception of any wire, oral, or electronic communication.

72. Under 18 U.S.C. § 2520(a) there is a private right of action to any person whose wire, oral, or electronic communication is intercepted.

73. Defendant intercepted Plaintiff's and Class Members' electronic communications without consent when Plaintiff and Class Members navigated through Defendant's app to other websites.

74. Defendant's interception took place when Plaintiff and Class Members clicked weblinks which re-directed Plaintiff and Class Members to Defendant's web-browser which injected a JavaScript code onto Plaintiff's and Class Members' web browser.

75. Plaintiff and Class Members were unaware Defendant was intercepting their electronic communications and tracking their communications and interactions.

76. Defendant intentionally utilized technology as a means of intercepting and acquiring the contents of Plaintiff's and Class Members' electronic communications, in violation of 18 U.S.C. § 2511.

77. Plaintiff and Class Members are persons whose electronic communications were intercepted by Defendant.  As such, they are entitled to preliminary, equitable, and declaratory relief, in addition to statutory damages of the greater of $10,000 or $100 per day for each violation, actual damages, punitive damages, and reasonable attorneys' fees and costs under 18 U.S.C. § 2520.

**SECOND CAUSE OF ACTION**

**UNLAWFUL WIRETAPPING AND INTERCEPTION OF ELECTRONIC COMMUNICATION**

**CALIFORNIA PENAL CODE § 631**

78. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs of this complaint.

79. Defendant intercepted Plaintiff's and Class Members' private electronic communications and transmissions when Plaintiff and other Class Members navigated to websites through Defendant's app from within the State of California.

18

80.   Plaintiff and Class Members did not know Defendant was engaging in such interception and therefore could not provide consent to have any part of their private electronic communications intercepted by Defendant.

81.   Plaintiff and Class Members were completely unaware that Defendant had intercepted and stored electronic communications and other personal data until well after the fact and were therefore unable to consent.

82.   Defendant never advised Plaintiff or the other Class Members that any part of their communications would be tapped.

83.   To establish liability under section 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner" does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

84. Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, --- F.3d --- 2020 WL 1807978 (9th Cir. Apr. 9, 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

85. By using software, like JavaScript, to track, record, and attempt to learn the contents of Plaintiff's and Class Members' electronic communications, Defendant intentionally tapped, electrically or otherwise, the lines of internet communication of Plaintiff and Class Members on one side and Defendant on the other.

86. Defendant willfully and without consent, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and putative Class Members, while the electronic communications were in transit or passing over a wire, line or cable or were being sent from or received at a place in California.

87. Plaintiff and Class Members did not consent to any of Defendant's actions in implementing these unauthorized connections, nor have Plaintiff or Class Members consented to Defendants' intentional access, interception, reading, learning, recording, and collection of Plaintiff's and Class Members' electronic communications.

///

///

88. Plaintiff's and the Class Members' devices that Defendant accessed through its unauthorized actions included their computers, smart phones, and tablets and/or other electronic computing devices.

89. Defendant violated Cal. Penal Code § 631 by knowingly accessing, and without permission accessing, Plaintiff's and Class Members' electronic communications through the use of software in order for Defendant to track, understand, and attempt to learn the contents of Plaintiff's and Class Members' electronic communications.

90. Defendant violated Cal. Penal Code § 631 by knowingly and without permission intercepting, wiretapping, accessing, taking and using Plaintiff's and the Class Members' communications.

91. Plaintiff and Class Members seek relief available under Cal. Penal Code § 631, including $2,500 per violation.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class Members pray that judgment be entered against Defendant, and Plaintiff and Class Members be awarded damages from Defendant, as follows:

- Certify the Class and Subclass as requested herein;
- Appoint Plaintiff to serve as the Class Representative for the Class and Subclass;
- Appoint Plaintiff's Counsel as Class Counsel in this matter;
- Preliminary and other equitable or declaratory relief as may be appropriate under 18 U.S.C. § 2520(b)(1);
- The greater of $10,000 or $100 per day for each violation of 18 U.S.C. § 2510 et seq pursuant to 18 U.S.C. § 2520(b)(2) and 18 U.S.C. § 2520(c)(2)(B);
- Reasonable attorneys' fees and other litigation costs reasonably incurred pursuant to 18 U.S.C. § 2520(b)(3);
- $2,500 to each Subclass Member pursuant to California Penal Code § 631(a).
- Reasonable attorneys' fees pursuant to Cal. Code of Civ. Proc. § 1021.5;

21

1    • Injunctive relief to prevent further violations of California Penal Code § 631.

2    • An award of costs to Plaintiff; and

3    • Any other relief the Court may deem just and proper including interest.

4

5                                    **TRIAL BY JURY**

6    92.    Pursuant to the Seventh Amendment to the Constitution of the United States of

7           America, Plaintiff and Class Members are entitled to, and demand, a trial by jury.

8

9                                          Respectfully submitted,

10                                         **SWIGART LAW GROUP**

11

12   Date:  October 28, 2022              By: _s/ Joshua Swigart_
                                          Joshua B. Swigart, Esq.
13                                        Josh@SwigartLawGroup.com
14                                        Attorneys for Plaintiff

15

16                                        **LAW OFFICE OF DANIEL G. SHAY**

17   Date:  October 28, 2022              By: _s/ Daniel Shay_
                                          Daniel G. Shay, Esq.
18                                        DanielShay@TCPAFDCPA.com
19                                        Attorney for Plaintiff

20

21

22

23

24

25

26

27

28

                                            22